# IN THE COURT OF APPEALS OF IOWA

No. 19-2076
Filed December 15, 2021

**CARLA ROSENBAUM,**
        Plaintiff-Appellee,

**vs.**

**SHAWN CHEVCHUC,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Chickasaw County, John J. Bauercamper, Judge.

Shawn Chevchuc appeals the district court's denial of his contempt motion. **AFFIRMED.**

Shawn V. Chevchuc, Rochester, Minnesota, self-represented appellant.

Nathaniel W. Schwickerath of Schwickerath, P.C., New Hampton, for appellee.

Considered by Mullins, P.J., May, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

Shawn Chevchuc appeals the district court's denial of his application for contempt. We affirm.

**I. Background Facts and Prior Proceedings**

In 2009, Chevchuc and Carla Rosenbaum entered into a stipulated custody decree relating to their child, A.C., which awarded both parents legal custody, physical care to Rosenbaum, and visitation to Chevchuc. With respect to transportation to and from visitation, the stipulation provided, "The parties shall share equally in transportation for the visits. If the parties cannot agree, then Shawn shall provide the transportation at the start of each visitation period and Carla shall provide the transportation at the end of each visitation period."

But Chevchuc was arrested in November 2016. And in July 2017, Chevchuc pled guilty in federal court to two counts of Social Security fraud and sentenced to 160 months in prison. Chevchuc is incarcerated in Minnesota. Since his incarceration, he has talked to A.C. twelve times on the telephone. Frustrated with his level of contact with A.C., Chevchuc initiated these contempt proceedings seeking the court to compel "Rosenbaum to immediately DOUBLE the previous amount of visitation ordered" and modify the custody agreement to provide Chevchuc's fiancé one three-day visitation period with A.C. per month. Additionally, Chevchuc filed a motion for sanctions against Rosenbaum's counsel alleging a number of ethical violations and a conflict of interest.

The district court held a hearing on the matter with Chevchuc appearing telephonically. The district court held the hearing in chambers because the acoustics in the courtroom would make it difficult for Chevchuc to hear over the

phone.  Following the hearing, the court did not find Rosenbaum in contempt.  The court also denied the motion for sanctions.  Chevchuc appeals.[1]

## II. Scope and Standard of Review

Because these parents were never married, this contempt action is governed by Iowa Code section 600B.37 (2019) and chapter 665.  *See Wendt v. Peterson*, No. 20-1018, 2021 WL 1400816, at *2 (Iowa Ct. App. Apr. 14, 2021).  And we review for an abuse of discretion because "the district court has broad discretion to withhold punishment."  *Id.*  We "interfere only where that discretion 'has been clearly abused.'"  *Id.* (citation omitted).

Likewise, "[w]e review a ruling an attorney disqualification motion for an abuse of discretion."  *Doe v. Perry Cmty. Sch. Dist.*, 650 N.W.2d 594, 597 (Iowa 2016).

## III. Discussion

Chevchuc raises a number of claims on appeal.  However, several are not preserved for our review.  Chevchuc claims his due process rights were violated because two of the witnesses did not testify, the hearing was not held in the courtroom, and the hearing was limited to fifteen minutes.  But Chevchuc never attempted to call either witness, raised no objection when informed the hearing was taking place in chambers due to acoustic issues, and never requested additional time for the hearing.  So his related due process claims are not preserved for our review.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).  Likewise, Chevchuc's claims of judicial misconduct are not preserved for

---

[1] Chevchuc filed a motion seeking the district court judge's recusal the same day he appealed.

our review because he never alleged any improper conduct until his motion for recusal, which was filed in tandem with his notice of appeal, divesting the district court of jurisdiction. *See Freer v. DAC, Inc.*, 929 N.W.2d 685, 687–88 (Iowa 2019) (noting "[a] moving party is deemed to have waived and abandoned a postrial motion when that party files a notice of appeal" and "[i]n filing [a] notice of appeal, [the moving party] divested the district court of jurisdiction over the posttrial motion").

Before turning to the issues preserved for our review, we take a moment to note some infirmities in Chevchuc's brief. For example, Chevchuc's brief contains no statement addressing how he preserved the issues for review and where they were raised and decided in the district court and no scope and standard of review statement. *See* Iowa R. App. P. 6.903(2)(g)(1), (g)(2)). Our appellate procedure "rules apply equally to parties represented by counsel and to those who are not." *Jensen v. Baccam*, No. 18-1848, 2020 WL 2060296, at *1 (Iowa Ct. App. Apr. 29, 2020). Chevchuc and other self-represented litigants should be cognizant that failure to comply with our rules can result in summary dismissal of appeals. *See, e.g.*, *Hanson v. Harveys Casino Hotel*, 652 N.W.2d 841, 843 (Iowa Ct. App. 2002) (noting "[w]here a party's failure to comply with the appellate rules requires the court to assume a partisan role and undertake a party's research and advocacy, we will dismiss the appeal" and our supreme court has "dismissed appeals for substantial failure to comply with the rules of appellate procedure, even without any finding or suggestion that the failures required the court to assume a partisan role or engage in a party's research or advocacy").

*A. Contempt*

Now we consider Chevchuc's first preserved claim, whether the court abused its discretion when it did not hold Rosenbaum in contempt. "A party alleging contempt has the burden to prove the contemner had a duty to obey a court order and willfully failed to perform that duty." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). "If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful." *Id.* "However, the person alleging contempt retains the burden of proof to establish willfulness beyond a reasonable doubt because of the quasi-criminal nature of the proceeding." *Id.*

Here, Chevchuc complains Rosenbaum has disallowed visitation between A.C. and Chevchuc since his incarceration in violation of their stipulated custody agreement. But we agree with the district court that Rosenbaum's "actions have been reasonable and do not rise to the level of contempt." For one, we note the visitation agreement requires *Chevchuc* to provide one-way transportation and Rosenbaum to provide the other if the parties cannot agree on a differing arrangement. But Chevchuc cannot provide his leg of transportation due to his incarceration, and we find Rosenbaum's refusal to let Chevchuc's fiancé transport A.C. to visit Chevchuc in Minnesota to be reasonable. Moreover, Rosenbaum testified to her limited financial means, which necessarily impacts her ability to transport A.C. back to Iowa from the visitations in Minnesota. *See McKinley v. Iowa Dist. Ct.*, 542 N.W.2d 822, 824 (Iowa 1996) (recognizing inability to pay expenses associated with compliance as a way to establish an absence of willful

disobedience and defense to contempt claim). So we conclude the district court did not abuse its discretion when it did not hold Rosenbaum in contempt.

### B. Motion for Sanctions and Disqualification of Counsel

To the extent Chevchuc contends the district court should have disqualified Rosenbaum's counsel for a conflict of interest, we conclude the court did not abuse its discretion.[2] Chevchuc claims there is a conflict of interest because Rosenbaum's counsel served as the designated attorney who closed the office of a solo practitioner who previously served as Chevchuc's family attorney. But Chevchuc was never previously represented by Rosenbaum's counsel. *See Doe*, 650 N.W.2d at 598 ("Once [the complaining party] prove[s] there is a substantial relationship between the former and current representations, there is a presumption the attorney must be disqualified."). And Chevchuc does not point to any specific information counsel would have gained from closing the solo practitioner's office that would create a conflict of interest. *Cf. id.* at 599 (noting we also consider the appearance of impropriety when making a disqualification determination and explaining "[i]n examining whether the appearance of impropriety exists, the mere possibility of impropriety is insufficient to warrant disqualification. The appearance of impropriety 'cannot be a fanciful, unrealistic or purely subjective suspicion of impropriety that requires disqualification. The appearance of impropriety must be real'" (citations omitted)). In fact, Rosenbaum's counsel took appropriate steps to sequester files and prevent the disclosure of

---

[2] We question whether error is preserved on this issue because we cannot find a definitive ruling on the issue in the record, but Rosenbaum concedes error is preserved.

information containing real or potential conflicts.  *See* Iowa Ct. R. 39.18(5) ("A designated attorney or entity must not examine any documents or acquire any information containing real or potential conflicts with the designated attorney's clients.").  So disqualification was not necessary.

Finally, Chevchuc claims the district court should have imposed sanctions on Rosenbaum's counsel for purported ethical violations.  But we agree with the district court that it does not have the authority to address Chevchuc's ethics complaints.  Instead, ethics complaints are resolved by the Iowa Supreme Court Attorney Disciplinary Board.

**AFFIRMED.**